**THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
In The Court of Appeals

Wheeler M. Tillman, Appellant,

v.

Samuel E. Tillman, Personal Representative for the Estate of Moye M. Tillman, Deceased, and Samuel E. Tillman, Individually, Respondents.

Appellate Case No. 2011-194886

———————

Appeal From Charleston County
Deadra L. Jefferson, Circuit Court Judge

———————

Unpublished Opinion No. 2013-UP-199
Heard December 11, 2012 – Filed May 15, 2013

———————

**AFFIRMED**

———————

Wheeler M. Tillman, of Tillman Law Firm, of N. Charleston, for Appellant.

Joseph S. Brockington, of Joseph S. Brockington, P.A., of Charleston, for Respondents.

———————

**PER CURIAM:**  In this action filed by Wheeler M. Tillman (Wheeler) against Samuel E. Tillman (Brother), individually and as personal representative of the Estate of Moye M. Tillman (Estate), the mother of Wheeler and Brother (Mother),

alleging causes of action for constructive trust and unjust enrichment, Wheeler appeals from the order of the circuit court granting summary judgment in favor of Brother and Estate. Wheeler asserts error in the court's application of the doctrine of laches to bar his claim, dismissal of his causes of action for unjust enrichment upon the doctrine of laches without ruling on his claims of unjust enrichment, and refusing to rule on the issues of unclean hands and judicial estoppel raised by Brother and Estate.  We affirm.

1.　　In Issues I and III, Wheeler contends the trial court erred in applying the doctrine of laches as a bar to his claims for constructive trust and unjust enrichment asserting there is insufficient evidence to support the elements of the defense. He contends his allegations as to the genesis of the constructive trusts are different as between Estate and Brother, and the trial court's analysis fails to differentiate between his claims against Brother individually and Brother in his representative capacity. Wheeler also argues Mother's death is irrelevant, given Brother's and Estate's admissions of what they knew without Mother's input, and because Mother's silence by reason of death has not caused Estate or Brother to incur expenses or enter into obligations or otherwise detrimentally change their positions.  Though acknowledging that unjust enrichment claims may be barred as untimely by the doctrine of laches, Wheeler argues "there is no record and the allegations alleging unjust enrichment are in dispute."  Wheeler maintains his claim for unjust enrichment against Brother is predicated on promises Brother made in 2006 and 2009.

The equitable doctrine of laches is defined as neglect for an unreasonable and unexplained length of time, under circumstances affording opportunity for diligence, to do what in law should have been done. *Robinson v. Estate of Harris*, 391 S.C. 114, 118, 705 S.E.2d 41, 43 (2011).  "In order to establish laches as a defense, a party must show that the complaining party unreasonably delayed its assertion of a right, resulting in prejudice to the party asserting the defense of laches." *Historic Charleston Holdings, LLC v. Mallon*, 381 S.C. 417, 432, 673 S.E.2d 448, 456 (2009).  "Whether a claim is barred by laches is to be determined in light of facts of each case, taking into consideration whether the delay has worked injury, prejudice, or disadvantage to the other party; delay alone in assertion of a right does not constitute laches." *Hallums v. Hallums*, 296 S.C. 195, 198-99, 371 S.E.2d 525, 527 (1988).  In sum, the party seeking to establish laches must show (1) delay, (2) unreasonable delay, and (3) prejudice.  *Id.* at 199, 371 S.E.2d at 528.

Applying the law to the allegations and representations made to the trial court, we find the trial court properly granted summary judgment to Brother and Estate on Wheeler's constructive trust and unjust enrichment claims based upon the equitable defense of laches. First, Wheeler exercised a lengthy delay in pursuing his claim. His divorce became final in 1982, and he acknowledged making demands of Mother to re-convey his alleged ownership interest following the end of his domestic litigation, which Mother refused. Wheeler himself noted that the post-filing and appeal of his domestic litigation did not involve property issues, but concerned visitation matters. Thus, we find the trial court properly determined Wheeler had reason to believe he had a claim as far back as the early to mid-1980s. Additionally, as noted by the trial court, Wheeler represented he made a written demand to Mother in 1991, and again in 2005 after the sale of the property. Although Wheeler made several demands on his mother to re-convey his ownership interest, he did not file suit to recover the value of his alleged property interest until 2010.

Next, we find the evidence supports the trial court's finding that the delay was unreasonable. The trial court specifically found, and Wheeler does not dispute, that Wheeler was "a practicing attorney in this area throughout the relevant time period." Additionally, Wheeler had knowledge of his rights since the early to mid-1980s, and certainly at least by 1991 when he alleged he sent Mother the letter. Wheeler had every opportunity to file the action throughout the relevant decades, but he failed to do so until June 3, 2010.

Additionally, the unreasonable delay resulted in prejudice to both Brother and Estate, as the alleged transactions upon which Wheeler bases his claims arose from communications and interactions between Wheeler and Mother. By waiting until 2010 to file his claims, Brother and Estate were prejudiced and disadvantaged in the defense of Wheeler's claims, as it was impossible for Brother and Estate to know of any defenses Mother may have had to Wheeler's claims. We find this position is further supported by the similar case of *Ramantanin v. Poulos*, 240 S.C. 13, 124 S.E.2d 611 (1962), wherein Ramantanin asserted a remainder interest in a home constructed on property owned by his father and demanded that his father convey to him the interest, which the father refused. *Id.* at 21-22, 124 S.E.2d at 615. The father died twelve years later, and Ramantanin brought a constructive trust action one year later against his step-sibling, who then held title to the property. *Id.* at 23, 124 S.E.2d at 616. Our supreme court, noting the action was not commenced until after the death of the father and approximately thirteen years after Ramantanin had notice the father refused his claim, determined Ramantanin's claim was barred by laches, stating as follows:

> The failure of the plaintiff to sooner seek a judicial
> determination of his claim has made it most difficult, if
> not impossible, to arrive at a safe conclusion as to the
> truth of the matters in controversy. The basic issues in
> the case involved factual matters about which only the
> plaintiff and [the father] knew. Many of the material
> facts and circumstances have become obscured by time.
> Because of the death of [the father], the other party to the
> claimed transaction, the defendants have bee[n] placed at
> a great disadvantage in defending their position. The
> plaintiff knew for twelve years before his father's death
> that his father had refused to execute title to the property
> to conform to the alleged agreement. Plaintiff failed to
> assert his rights during that period of time and he offers
> no satisfactory explanation of his refusal to do so.

*Id.* at 23-24, 124 S.E.2d at 616. Similarly, Wheeler had known for at least eighteen years, and possibly twenty-five or more years, of his potential claims against Mother and her refusal to meet his demands, yet he failed to act on them until after Mother died. He provides no satisfactory explanation for his refusal to assert his rights in the extensive time between notice of his claim and Mother's death. *See David v. McLeod Reg'l Med. Ctr.*, 367 S.C. 242, 250, 626 S.E.2d 1, 5 (2006) ("[S]ummary judgment is completely appropriate when a properly supported motion sets forth facts that remain undisputed or are contested in a deficient manner."). *See also Baughman v. Am. Tel. & Tel. Co.*, 306 S.C. 101, 115, 410 S.E.2d 537, 545 (1991) and Rule 56(e), SCRCP (Once the moving party carries its initial burden of demonstrating the absence of a genuine issue of material fact, the opposing party must do more than rest upon the mere allegations or denials of his pleading, but must, by affidavit or otherwise, set forth specific facts showing that there is a genuine issue for trial).

Finally, we disagree with Wheeler's contention that his allegations as to the genesis of the constructive trust and unjust enrichment claims are different as between Estate and Brother. Considering the evidence and all reasonable inferences therefrom in the light most favorable to Wheeler, the alleged promises by Brother in 2006 and 2009 do not establish a separate constructive trust or unjust enrichment of Brother. As noted by the trial court, the communications between Wheeler and Mother were the basis of the claim for Wheeler's assertion that a constructive trust occurred with Brother from 2006 to 2010. Mother died in 2009, and there is no evidence Brother had any authority to act on her behalf prior to that date. Further,

Wheeler would be entitled to claim funds ultimately held by Brother as a constructive trust only if these funds were held by Mother in constructive trust for Wheeler. Without a showing that Wheeler was beneficially entitled to the interest in the property held by Mother, there can be no showing that Brother could not, in equity and good conscience, hold the right to the property. *See SSI Med. Servs., Inc. v. Cox*, 301 S.C. 493, 500, 392 S.E.2d 789, 793-94 (1990) ("A constructive trust arises whenever a party has obtained money which does not equitably belong to him and which he cannot in good conscience retain or withhold *from another who is beneficially entitled to it* as where money has been paid by accident, mistake of fact, or fraud, or has been acquired through a breach of trust or the violation of a fiduciary duty.") (emphasis added); *Halbersberg v. Berry*, 302 S.C. 97, 106, 394 S.E.2d 7, 13 (Ct. App. 1990) ("A constructive trust arises against one who by fraud, actual or constructive, by duress or abuse of confidence, by commission of a wrong or by any form of unconscionable conduct, artifice, concealment, or questionable means and against good conscience, either has obtained or *holds the right to property which he ought not in equity and good conscience hold and enjoy*.") (emphasis added). A determination of constructive trust being held by Brother cannot be reached without also concluding that Mother wrongfully withheld the value of Wheeler's ownership interest. The same holds true for Wheeler's claim of unjust enrichment. Brother would only be unjustly enriched by retention of the funds if Mother had been unjustly enriched by retention of the funds. *See Regions Bank v. Wingard Props., Inc.*, 394 S.C. 241, 256-57, 715 S.E.2d 348, 356 (Ct. App. 2011) ("Unjust enrichment is an equitable doctrine, which permits recovery of the amount that the defendant has been unjustly enriched at the expense of the plaintiff. The elements to recover for unjust enrichment based on quantum meruit, quasi-contract, or implied by law contract, which are equivalent terms for equitable relief, are: (1) a benefit conferred by the plaintiff upon the defendant; (2) realization of that benefit by the defendant; and (3) retention of the benefit by the defendant *under circumstances that make it inequitable* for him to retain it without paying its value.") (internal citation and quotation marks omitted) (emphasis added). Wheeler has made no showing or allegations that Brother's alleged agreements in 2006 and 2009 to personally pay Wheeler the amount Wheeler claimed was due him for his interest in the boyhood home amounted to a separate constructive trust held by Brother for Wheeler, or that these alleged agreements support recovery based upon an unjust enrichment claim.

2.     In Issue II, Wheeler contends the trial court erred in failing to address the issue of unjust enrichment as to Brother individually, and argues the three elements of unjust enrichment are satisfied by the inferences from his complaint. This

argument has no merit. The trial court specifically found "Defendants are entitled to summary judgment as to *all claims* based on the equitable doctrine of laches." (emphasis added). Because the trial court found laches barred Wheeler's unjust enrichment claims, there was no reason for the court to decide whether Wheeler set forth a claim for unjust enrichment against Brother. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (holding an appellate court need not address remaining issues when disposition of a prior issue is dispositive).

3.      In Issues IV and V, Wheeler makes a somewhat circuitous argument, questioning whether the trial court abused its discretion in refusing to rule on the issues of unclean hands and judicial estoppel raised by Respondents, yet stating it is difficult to tell whether the trial court applied these doctrines against him. Wheeler then argues these equitable defenses do not apply to his case. This argument likewise has no merit. Though Respondents filed a motion for summary judgment on the bases of several grounds, the trial court granted the motion based solely on the doctrine of laches, and declined to rule on the other equitable defenses raised. The fact that the trial court noted the doctrines of unclean hands and judicial estoppel could be cited as additional sustaining grounds in the event of appeal is of no import. *See McCall v. Finley*, 294 S.C. 1, 4, 362 S.E.2d 26, 28 (Ct. App. 1987) (noting our appellate courts recognize an overriding rule which says: "whatever doesn't make any difference, doesn't matter."). The court specifically stated it declined to rule upon the unclean hands and judicial estoppel arguments. Wheeler filed a Rule 59(e), SCRCP, motion to alter or amend the judgment, taking exception to the trial court's language concerning these doctrines being cited as additional sustaining grounds, and further arguing these doctrines would not apply to bar his claims. In its order denying Wheeler's motion, the trial court interpreted Wheeler's motion to alter or amend as requesting the trial court to address judicial estoppel and unclean hands. The court reiterated that it found the issue of laches dispositive, and therefore there was no need to address these additional grounds. The trial court clearly did not rule on the judicial estoppel and unclean hands arguments, and was not required to given the court's decision to grant summary judgment based upon the equitable doctrine of laches.

**AFFIRMED.**

**HUFF, THOMAS, and GEATHERS, JJ., concur.**