Barry KNAUS, Appellant–Defendant,

v.

Christi YORK, Appellee–Plaintiff.

No. 58A01–9110–CV–303.

Court of Appeals of Indiana,
First District.

Feb. 19, 1992.

W. Gregory Coy, Eaton & Romweber, Versailles, for appellant-defendant.

Linley E. Pearson, Atty. Gen., Leneigha L. Downs, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellee-plaintiff.

BAKER, Judge.

Barry Knaus appeals from an order establishing child support for his ten-year-old son, B.Y. He raises six issues for our review, which we restate as:

I. Whether it was proper for the trial court to determine Barry's visitation and child support at different hearings.

II. Whether the child support award of $107.00 per week was supported by the evidence.

III. Whether it was proper to require Barry to pay the state's expert witness fees.

IV. Whether there was sufficient evidence to support the award of $2,000.00 in back support payments.

V. Whether a list specifying the fees for the state's expert witness was properly admitted into evidence.

VI. Whether the mother's child support worksheet was properly admitted into evidence.

We affirm.

### FACTS

In 1982, Christi York (Christi) filed a petition to establish the paternity of her son, B.Y. The trial was not held until January 30, 1991, at which time the jury

found Barry Knaus (Barry) was B.Y.'s father. B.Y. was ten years old when the paternity determination was finally made. The court entered Barry's child support obligations on May 30, 1991, and his visitation rights were decided at a hearing on August 2, 1991.

## DISCUSSION AND DECISION

### I

■ First, Barry argues it was impermissible for the trial court to determine child support and visitation in separate hearings. IND.CODE 31–6–6.1–10(a) provides, in relevant part: "Upon finding that a man is the child's biological father, the court shall, in the initial determination, conduct a hearing to determine the issues of support, custody, and visitation." Barry construes this statute to require that support, custody, and visitation must be decided in one hearing. We disagree.

■ When construing a statute we give words their ordinary significance and commonly accepted meaning unless from the statute a different meaning is clearly manifested. *In re R.B.T.* (1990), Ind.App., 550 N.E.2d 769, 770. Furthermore, we must view a statute within the context of the entire act. *Id.*

Barry does not argue that he has been denied visitation rights; he concedes that on August 2, 1991, the court held a hearing for this very purpose. Neither does he show that he has been prejudiced by the court conducting separate hearings for child support and visitation. He simply complains that his visitation rights were not decided at the same hearing when his child support obligation was decided.

As the state[1] correctly notes, decisions regarding child support and visitation rights lie within the trial court's sound discretion. *In re Bratcher* (1990), Ind. App., 551 N.E.2d 1160, 1163 (child support orders are for the trial court's discretion); *In re Joe* (1985), Ind.App., 486 N.E.2d 1052, 1055 (decisions involving visitation rights are committed to the discretion of the trial court). By construing the statute to require that all decisions be made in one hearing, we saddle the trial court with the burdensome requirement that all issues be prepared for resolution before any one may be decided. Because trial courts have discretion when making child support and visitation orders, they are afforded the same discretion to decide whether to hear the evidence in one hearing or in separate hearings. This discretion is not inconsistent with the mandate that the court conduct "a hearing to determine the issues of support, custody, and visitation." IND.CODE 31–6–6.1–10(a).

### II

Next, Barry argues that the child support award of $107.00 per week was not supported by the evidence.[2] Specifically, he complains that the award more than doubles Christi's take home pay and exceeds her expenses to support B.Y., the support order does not take into consideration expenses incurred by Barry to drive 315 miles to see his son, and the court failed to deduct enough from Barry's weekly available income for Barry's obligations to his three other children. This court reviews child support orders only for an abuse of discretion. *In re Bratcher, supra,* at 1163. We will not reweigh the evidence or substitute our judgment for that of the trial court. *Farmer v. Minor* (1986), Ind.App., 495 N.E.2d 553, 559, *trans. denied.*

When the trial court orders child support payments, IND.CODE 31–6–6.1–13(a) pro-

1. The state is involved in this action because Christi received funds in 1988 under the Aid to Families with Dependent Children program. The record reveals that as of September 30, 1990, she had received $1,832.00 in unreimbursed public assistance.

2. The trial court also ordered Barry to pay $916.00 for reimbursement of benefits received from Aid to Families with Dependent Children, to pay $375.00 for reimbursement of birth related expenses, and to include B.Y. on Barry's health insurance policy. In addition, uninsured medical expenses are to be shared equally by Barry and Christi. Barry does not appeal the order requiring him to pay these expenses.

vides that it must consider all relevant factors, including:

(1) The financial resources of the custodial parent.

(2) The standard of living the child would have enjoyed had the parents been married and remained married to each other.

(3) The physical and mental condition of the child and his educational needs.

(4) The financial resources and needs of the noncustodial parent.

Furthermore, the trial court is to apply the Indiana Child Support Guidelines in "every instance in which child support is established including, but not limited to, dissolutions of marriage and paternity actions." Commentary, Ind. Child Support Guideline 2.

Here, the trial court arrived at Barry's support obligation by applying the Indiana Child Support Rules and Guidelines as adopted by the Indiana Supreme Court. From the evidence offered by both Christi and Barry, the trial judge found that Barry's weekly gross income was $657.00, and Christi's was $120.00. The court then deducted from Barry's weekly income $120.00 for his support obligation to three other children, which made his available weekly income $537.00. The basic child support obligation for B.Y. was calculated to be $111.00 plus $20.00 per week for Christi's work-related baby-sitting expenses, for a total of $131.00. Using the Guidelines, the trial court determined that Barry was responsible for 82% of the $131.00, or $107.00. To alleviate financial hardship to Barry, the trial court phased in the support payment by ordering Barry to pay $60.00 a week for the first year. Thereafter, Barry must pay $107.00 a week until B.Y. attains majority, marries, becomes emancipated, enters military service, or until further ordered by the court.

■ First, Barry complains that the $107.00 award more than doubles Christi's take home pay and exceeds the expenses she incurs for B.Y. The record reveals that Christi currently works approximately 32 hours every two weeks while she carries 13 hours as a student at the University of Cincinnati. She is able to provide for her ten-year-old son only with financial assistance from her family, which includes living rent-free with Christi's grandmother. Christi testified, however, that she pays for half of the food out of her income. We find that the award complies with the recommended Guidelines and is supported by Barry's income, Christi's income, and the standard of living B.Y. would have enjoyed had his parents married each other and remained married. Commentary, Child Support Guideline 1. In light of this evidence, it was not an abuse of the trial court's discretion to order Barry to pay $107.00 per week to assist with his son's support. *See In re R.B.T., supra,* at 772.

■ Barry also argues that the trial court should have deviated from the guidelines because he will incur "significant travel expenses" to visit the child. *See* Commentary, Child Support Guideline 1. Barry lives in Michigan and B.Y. resides in Southern Indiana. At trial, Barry failed to offer evidence regarding future travel expenses or to request that the trial court consider travel expenses when determining his support obligation. Because this issue was not first raised at trial, it is accordingly waived. *Williams v. City of Indianapolis* (1990), Ind.App., 558 N.E.2d 884, 887, *trans. denied.* We note that even if Barry had properly raised the issue at trial, the determination of whether the expenses were significant and whether to consider them would have been left to the trial court's sound discretion. *See, e.g., Lulay v. Lulay* (1991), Ind.App., 583 N.E.2d 171 (apportionment of uninsured medical expenses under the guidelines is left to the trial court's sound discretion).

■ Barry also argues that the trial court failed to deduct enough from his weekly available income to reflect his support obligations to three other children. Pursuant to Child Support Guideline 3(C)(2), the trial court should deduct from the parent's weekly gross income his legal support duty for other children. In this case, the court deducted $120.00 per week for support obligations Barry owed to three other children. Without providing explanation or legal authority, Barry states

that the deduction should have been $209.00. We disagree.

We note that Christi correctly recognizes in her Appellee's Brief that any deduction was, in fact, contrary to the "first in time, first in right rule." Commentary, Child Support Guideline 3(C). Under the commentary to the Guidelines, therefore, the trial court, in its discretion, is permitted to not consider support of later born children when calculating the income available to support first born children. Here, the three other children to whom Barry owes support were born after B.Y. Because the trial court could have allowed no deduction for support obligations owed to the later born children, we find that the $120.00 deduction was not an abuse of the trial court's discretion.

## III

■ Next, Barry argues that the trial court abused its discretion when it ordered him to pay the state's expert witness fees of $700.00. He argues that because IND. CODE 31–6–6.1–18 provides for recovery of the reasonable expenses of any medical tests and reasonable attorney's fees, but does not provide for expert witness fees, the legislature necessarily intended to exclude recovery of expert witness fees in paternity actions. We disagree.

Under IND.CODE 31–6–6.1–8, blood testing in paternity actions must be conducted by qualified experts. Before the test results may be introduced into evidence, this court has held that a proper foundation must be established to prove that the doctor who conducted the tests was a qualified expert. *In re Gregory* (1984), Ind.App., 469 N.E.2d 480. Because a qualified expert is therefore required when proving paternity through blood tests, we conclude that it is proper to consider the expert's fees a necessary expense of the medical tests. Accordingly, we hold that the trial court has discretion to tax as costs reasonable expert witness fees under IND.CODE 31–6–6.1–18(a).

## IV

Barry also argues that the trial court abused its discretion when it ordered him

to pay retroactive child support in the amount of $2,000.00. He complains that Christi presented no evidence to support the $2,000.00 award, and that her claim was barred by the doctrine of laches because she did not pursue the claim for nine years after it was originally filed. We disagree with both arguments.

Pursuant to IND.CODE 31–6–6.1–13(g), the trial court must provide a minimum amount of back support regardless of whether it is requested by the petitioner. *Carter v. Morrow* (1990), Ind.App., 563 N.E.2d 183, 187. The award of back support is to be dated from either "(1) the birth of the child; or (2) the filing of the paternity action, whichever event occurs later." IND.CODE 31–6–6.1–13(g). In addition, this court recently held that the code does not repeal Indiana common law which allows trial courts to order back support for up to two years before the paternity action was filed. *Carter, supra.* The decision whether to order the additional back support is left to the trial court's sound discretion. *Id.*

■ Barry complains that the trial court should not have awarded Christi $2,000.00 in back support because she presented no evidence to support her past financial expenditures. Christi filed the paternity action in 1982, but it was not brought to trial until January 30, 1991. The $2,000.00 arrearage divides into approximately $222.22 for each of the nine years, $18.50 for each month during those nine years, or $4.30 for each week. Had Christi been able to reconstruct her expenses to support B.Y. during that period, certainly they would have far exceeded $4.30 per week. As well, if the court followed the code and Child Support Guidelines to calculate Barry's back support obligation, the $2,000.00 award would have fallen far short. Accordingly, we hold that the trial court did not abuse its discretion in awarding Christi a lump sum arrearage of $2,000.00.

■ Likewise, Barry's laches argument also fails. He claims that the action should be barred by laches because it was filed in

1982 but was not pursued until 1991. "Laches is neglect for an unreasonable length of time, under circumstances permitting diligence, to do what in law should have been done." *Harrington v. State* (1984), Ind.App., 466 N.E.2d 1379, 1381, *trans. denied.* Furthermore, there must be unreasonable delay and prejudice to the opposing party. *Id.* Barry's argument fails because the doctrine of laches simply does not apply to child support cases. This court will not penalize a child for his or her parent's delay in pursuing child support.[3] *In re Truax* (1988), Ind.App., 522 N.E.2d 402, 407, *trans. denied* (eight year delay in filing a petition may not be attributed to the children for whose benefit the child support was due).

## V

Next, Barry argues that the trial court erred when it admitted into evidence the list identifying the state's expert witness's miscellaneous expenses. Barry objected to its introduction at trial on the basis that it constituted hearsay, but the court overruled the objection. Hearsay evidence is defined as an out-of-court statement offered in-court to prove the truth of the matter contained therein. *Bray v. State* (1982), Ind., 430 N.E.2d 1162. Here, Barry complains that the maker of the exhibit, Dr. Debra Endean, was not present for cross-examination when the list was introduced into evidence. Because he was later ordered to pay most of the costs found on the list, Barry argues the trial court impermissibly considered the list for the truth of what was contained therein. We agree that introduction of the doctor's fee list was impermissible hearsay. The error was harmless, however, because in paternity actions the trial court has discretion to determine reasonable expert witness fees, *see supra* Issue III, and, after reviewing the record, we find that the award of fees here was not an abuse of that discretion.

---

**3.** We note that Christi did not have the finances to pursue this action after she originally filed the complaint in 1982. As already discussed,

## VI

Finally, Barry argues that the trial court erred when it admitted Petitioner's Exhibit No. 6 over Barry's objections. The exhibit was Christi's worksheet completed pursuant to Indiana Child Support Guideline 3(B). The state sought to introduce the worksheet after Barry testified about his income. Christi had already been called as a witness and had testified about her income. The record reveals that the worksheet merely reflected the incomes as attested to by both Barry and Christi, and the trial judge intended to request both parties to submit their worksheets following the testimony. Ind. Trial Rule 43(G) affords trial courts discretion in directing the order in which evidence is presented. Here, there was no error when the trial court permitted the state to introduce Christi's worksheet after Barry testified about his income.

Judgment affirmed.

RATLIFF, C.J., and GARRARD, J., concur.

the state became involved in 1988 when Christi began receiving public assistance. *See supra* note 1.